IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| JEROME O. FACHNER and CAROL A. FACHNER,<br><br>Plaintiffs,<br><br>vs.<br><br>AMERICAN ECONOMY INSURANCE COMPANY,<br><br>Defendant. | CV 23-63-BLG-KLD<br><br>ORDER |

This matter comes before the Court on Defendant American Economy Insurance Company's ("AEIC") motion for partial summary judgment. (Doc. 28). For the reasons discussed below, the motion is granted in part and denied in part.

I.  **Background**

The Plaintiffs in this matter are Jerome and Carol Fachner. On January 27, 2021, the Fachners' home was damaged in a housefire. (Doc. 34 at 2 ¶ 2). At the time of the fire, the Fachners home was insured under a homeowners insurance policy ("the Policy") issued to the Fachners by AEIC. (Doc. 34 at 2 ¶ 3). On January 27, 2021, the Fachners filed a claim under the Policy with AEIC. (Doc. 34 at 3 ¶ 5).

1

The primary dispute in this matter relates to the Policy's "Coverage A—Dwelling." The limit of liability for Coverage A is $357,700. (Doc. 34 at 3 ¶ 6). The Policy includes additional coverages that may be available to the Fachners. (Doc. 34 at 3 ¶ 6). However, both parties agree that—as of the time of briefing on summary judgment—the Fachners have not taken the requisite steps that would make those coverages available under the terms of the Policy. (Doc. 34 at 14 ¶¶ 29-30).

Following an investigation, AEIC made a first payment to the Fachners under Coverage A on February 10, 2021, in the amount of $163,255.47. (Doc. 34 at 4 ¶ 9). AEIC made its final payment under Coverage A on March 21, 2023. This final payment was in the amount of $150,902.19. (Doc. 34 at 4 ¶ 10). The parties agree that, following this final payment, the full limit of Coverage A had been paid. (Doc. 34 at 5 ¶ 11). The dispute between the parties generally concerns the events between the first and last payments.

The initial assessment of damage to the Fachners' home, prepared prior to the first payment, did not note damage to the concrete in the home's basement. (Doc. 34 at 26 ¶ 4; Doc. 34-8 at 1). After the initial payment, the Fachners discussed this additional damage with the claims resolution specialist assigned to their claim. (Doc. 34 at 27 ¶ 8; Doc. 34-5 at 1). The Fachners later hired John Johnson of 2x2 Construction to prepare an estimate for repairs, including the

2

damage to the concrete in the basement. (Doc. 34 at 28 ¶ 11; Doc. 34-6 at 2). The estimate prepared by Johnson put the cost of repairs at $403,719. (Doc. 34 at 28 ¶ 13; Doc. 34-6 at 2). AEIC then hired another firm to prepare an engineering report regarding damage to the property. That report was prepared by Thomas Petray of Rimkus Consulting Group, Inc. in June of 2022 and confirmed damage to the concrete in the basement. (Doc. 34 at 29 ¶¶ 16-17; Doc. 34-9 at 3).

In November 2022, Attorney Mark Parker wrote a letter to AEIC on behalf of the Fachners, in which he demanded payment for the balance of liability under Coverage A. (Doc. 34 at 29 ¶ 18; Doc. 34-11). AEIC thereafter hired Alpha Omega, a contractor, to complete an estimate of damage to the home. (Doc. 34 at 29 ¶ 19; Doc. 34-12). That estimate confirmed the damage to the basement, and estimated the cost of repairs to be $646,494.34—exceeding the limit of Coverage A. (Doc. 34-12 at 3, 94).

The Fachners filed their complaint in this matter in June of 2023 and an amended complaint on July 13, 2023. (Docs. 1, 5). The amended complaint lists three causes of action: breach of contract (Count I), breach of the covenant of good faith and fair dealing (Count II), and violation of Montana's Unfair Trade Practices Act ("UTPA") (Count III). The Fachners request general, special, punitive, and contract damages, as well as attorney's fees and costs. (Doc. 5 at 8 ¶¶ 1-3). On October 25, 2024, AEIC filed the instant motion, seeking summary judgement as

to Count I, Count II, subpart iii of paragraph 44 in Count III (alleging a violation of Montana Code Annotated § 33-18-201), and the Fachners' claims for attorney's fees and punitive damages. (Doc. 28).

## II.     Legal Standard

Under Federal Rule of Civil Procedure 56(a), a party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The party seeking summary judgment bears the initial burden of informing the Court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of any genuine issue of material fact. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323 (1986). A movant may satisfy this burden where the documentary evidence produced by the parties permits only one conclusion. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 251 (1986).

Once the moving party has satisfied its initial burden with a properly supported motion, summary judgment is appropriate unless the non-moving party designates by affidavits, depositions, answers to interrogatories or admissions on file "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324. The party opposing a motion for summary judgment "may not rest upon the mere allegations or denials" of the pleadings. *Anderson*, 477 U.S. at 248.

In considering a motion for summary judgment, the court "may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 249-50. The Court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in the non-moving party's favor. *Anderson*, 477 U.S. at 255; *Betz v. Trainer Wortham & Co., Inc.*, 504 F.3d 1017, 1020-21 (9th Cir. 2007).

**III.   Discussion**

    **a.   Breach of Contract**

To prevail on a claim for breach of contract, a plaintiff must establish (1) the existence of a valid and enforceable contract; (2) breach of an express or implied contract duty or obligation; and (3) resulting contract damages. *Kostelecky v. Peas in a Pod LLC*, 518 P.3d 840, 859-60 (Mont. 2022) (citing *Tin Cup Cty. Water & Sewer Dist. v. Garden City Plumbing & Heating, Inc.*, 200 P.3d 60, 68-70 (Mont. 2009)).

It is settled law in Montana that the interpretation of an insurance contract presents a question of law. *Scentry Biologicals, Inc. v. Mid-Continent Cas. Co.*, 319 P.3d 1260, 1264 (Mont. 2014). A court interpreting an insurance policy is to read the policy as a whole and, to the extent possible, reconcile the policy's various parts to give each meaning and effect. *Kilby Butte Colony, Inc. v. State Farm Mut. Auto. Ins. Co.*, 403 P.3d 664, 668 (Mont. 2017). The court must interpret the terms

of the "insurance policy according to their usual, common sense meaning as viewed from the perspective of a reasonable consumer of insurance products." *Allstate Ins. Co. v. Wagner-Ellsworth*, 188 P.3d 1042, 1046 (Mont. 2008) (quoting *Stutzman v. Safeco Ins. Co. of America*, 945 P.2d 32, 34 (Mont. 1997)). In doing so, the court "may not rewrite the contract at issue, but must enforce it as written if its language is clear and explicit." *Allstate Ins. Co.*, 188 P.3d at 1046.

"Unambiguous insurance provisions are to be enforced unless the provision violates public policy or is against good morals." *Fisher ex rel McCartney v. State Farm Mut. Auto. Ins. Co.*, 305 P.3d 861, 868 (Mont. 2013). If the terms of an insurance policy are ambiguous, however, that ambiguity must be strictly construed against the insurer. *Stutzman*, 945 P.2d at 34. "An '[a]mbiguity exists only when the contract taken as a whole or in its wording or phraseology is reasonably subject to two different interpretations.'" *Farmers Alliance Mut. Ins. Co. v. Holeman*, 961 P.2d 114, 119 (Mont. 1998) (quoting *Canal Ins. Co. v. Bunday,* 813 P.2d 974, 911 (Mont. 1991)).

In Count I of their amended complaint, the Fachners allege AEIC "breached the insurance contract by failing to pay [the Fachners'] full compensation for their losses, plus attorneys fees and costs, as well as interest accruing since the date of submission of claim." (Doc. 5 at 6 ¶ 36). On summary judgment, AEIC argues that there has been no breach of the insurance contract because AEIC "paid the limits

of liability available for all coverages to which [the] Fachners are entitled." (Doc. 30 at 13).

The Fachners do not contest AEIC's assertion that they were paid everything to which they are currently entitled under the Policy. Rather, the Fachners argue AEIC breached the insurance contact by refusing to pay when payments were due, and they are entitled to consequential damages stemming from the delayed payments. (Doc. 33 at 17-18). Both claims turn on whether the Policy obligated AEIC to make payments according to a particular schedule, or within a certain timeframe. As explained below, the Policy establishes no such duty and therefore AEIC is entitled to summary judgment as to the Fachners' claim for breach of contract.

Both parties agree the Fachners have received payments totaling $357,700 for the base limits of liability under Coverage A. (Doc. 34 at 14 ¶ 30). The parties further agree the Policy includes coverages that the Fachners have not yet utilized. (Doc. 33 at 12; Doc. 30 at 13). These additional coverages include Extended Dwelling Coverage, Debris Removal Coverage, and Building Ordinance of Law Coverage. The terms of the Policy make clear that these coverages are not available until after expenses have been incurred. The Fachners do not contest that determination, but argue that they have not yet been able to incur those expenses because AEIC paid the remaining amounts due under the base policy after

significant delay. (Doc. 33 at 12).

AEIC argues it is entitled to summary judgment because the Policy did not obligate payment within a particular timeframe. The Fachners' primary argument concerning the alleged breach is that they were owed full payment under the Coverage A "upon demonstration of that damage under the Dwelling Coverage." (Doc. 33 at 13). Specifically, the Fachners allege payment was due when AEIC received the estimate from 2x2 Construction. (Doc. 33 at 15).

In support, the Fachners highlight Policy language addressing covered property losses and replacement cost. (Doc. 33 at 13-15). Specifically, the following provisions are found in the Policy, Section I—Property Conditions, and address how covered property loses are settled:

> 5.   Loss Settlement. Covered Property losses are settled as follows:
>
> a.   Replacement Cost. Property under Coverage A or B, including fences, at replacement cost . . . subject to the following:
>
> (1)   We will pay the full cost of repair or replacement, but not exceeding the smallest of the following amounts:
>
> . . .
>
> (b)   the replacement cost of that part of the damaged building or fence for equivalent construction and use on the same premises as determined *shortly following the loss;*
>
> (c)   the full amount actually and necessarily

>> incurred to repair or replace the damaged building or fence as determined *shortly following the loss*;
>
> . . . .

(Doc. 5-1 at 21, emphasis omitted from original, new emphasis added). The Fachners argue "[t]his policy language can only be interpreted one way, American Economy had a duty to pay the limits of [Coverage A] when it knew the cost to repair or replace the damage to the Fachners' home exceed the stated policy limits." (Doc. 33 at 15).

However, this assertion does not accurately reflect the contractual obligations stated in the Policy. The provisions highlighted by the Fachners do not establish a deadline for payment of Coverage A. Instead, the phrase "shortly following the loss" in both provisions merely indicates when the relevant amounts should be determined. Policy language instructing that a cost should be determined "shortly following the loss" cannot be read to mandate a contractual obligation to pay at that same time. Absent a specific contractual obligation to pay within a certain time, there can be no breach of contract based on an alleged delay. Without a breach, there is no entitlement to damages, direct or consequential, on a breach of contract theory, and AEIC is entitled to summary judgment on the Fachners' breach of contract claim.

### b. Unfair Trade Practices Act

AEIC requests summary judgment on the allegation contained in subpart iii

of paragraph 44 in Count III of the Fachners' complaint, which alleges AEIC violated Mont. Code Ann. § 33-18-201 and thus the UTPA, by "[c]ompelling their insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by the insureds." (Doc. 5 at 7 ¶ 44; Doc. 28 at 1-2). Although not directly cited, this language mirrors Mont. Code Ann. § 33-18-201(7). However, that particular subsection of § 33-18-201 cannot provide the basis for an independent UTPA claim. "An insured or third-party claimant has an independent cause of action against an insurer for actual damages caused by the insurer's violation of 33-18-201 (1), (4), (5), (6), (9), or (13)." Mont. Code Ann. § 33-18-242(1); *see also Fossen v. Caring for Montanans, Inc.*, 993 F. Supp. 2d 1254, 1260 (D. Mont. 2014), *aff'd* 617 Fed. Appx. 737 (9th Cir. 2015).

In their response, the Fachners do not directly address AEIC's contention that there is no cause of action for their claims in subpart iii. Instead, they argue that "the Montana Supreme Court has explicitly stated that it is a question of fact for the jury to determine whether the protections provided by of [sic] § 33-18-201, MCA, have been violated by an insurer, including subsection (7)." (Doc. 33 at 20) (citing *Hart-Anderson v. Hauck*, 748 P.2d 937 (Mont. 1988)). However, the *Hart-Anderson* case pre-dates the enactment of Mont. Code Ann. § 33-18-242, which explicitly limits the private causes of action available to an insured. The *Hart-*

10

*Anderson* court was not asked to determine whether the plaintiff could proceed under § 33-18-201(7), but was asked to determine the appropriateness of an expert witness invading the province of the jury in opining about violations of Mont. Code Ann. § 33-18-201. *Hart-Anderson*, 748 P.2d at 943. Quite simply, it is established law that an insured may only bring claims for violations of the enumerated sections found in Mont. Code Ann. § 33-18-242(1), and because 201(7) is not one of those enumerated sections, AEIC is entitled to summary judgment on subpart iii of paragraph 44 in Count III.

    c.    **Attorney's Fees**

The availability and calculation of fees is a substantive issue and in diversity cases is therefore governed by state law. "In a diversity case, the law of the state in which the district court sits determines whether a party is entitled to attorney fees, and the procedure for requesting an award of attorney fees is governed by federal law." *Carnes v. Zamani*, 488 F.3d 1057, 1059 (9th Cir. 2007) (citing *In re Larry's Apartment, L.L.C.,* 249 F.3d 832, 837–38 (9th Cir. 2001)). Because this case is before the Court under diversity jurisdiction, Montana law applies to the availability of attorney's fees.

Montana follows the "American Rule," under which prevailing parties must generally bear their own fees. However, Montana recognizes several equitable exceptions to the American Rule, including the insurance exception, which allows

recovery of fee "when the insurer forces the insured to assume the burden of legal action to obtain the full benefit of the insurance contract." *Mt. W. Farm Bureau Mut. Ins. Co. v. Brewer,* 69 P.3d 652, 660 (Mont. 2003).

 Without specifying the basis, the Fachners' complaint asks for "all attorneys fees and costs incurred in this action . . . ." (Doc. 5 at 8 ¶ 3). AEIC contends the Fachners have no basis to claim attorney fees under any theory. Regarding the insurance exception, AEIC argues it is inapplicable because the Fachners were paid all benefits to which they were then contractually entitled several months before they filed their complaint in this matter. (Doc. 30 at 22). As above, the Fachners concede they were paid amounts owed under the contract prior to the initiation of litigation. However, the Fachners contend that whether they were compelled to initiate litigation—in accordance with the exception—"is a question of fact, supported by evidence in the record." (Doc. 33 at 20). The substance of the Fachners' argument is that AEIC paid the Fachners after significant delay, and only after the Fachners hired an attorney who then threatened AIEC with a lawsuit. (Doc. 33 at 21). Therefore, the Fachners contend, they were compelled to initiate the present litigation in order to recover the amounts they were owed under the Policy. The Fachners further argue that they are entitled to additional damages flowing from AEIC's untimely payment and that those damages would "not be recoverable, absent the present litigation." (Doc. 33 at 23).

The Fachners' argument on this issue is unavailing. The insurance exception requires that the insurer withhold payment of the full benefit due to the insured and further requires the insured to institute litigation in order to receive that full benefit. Both parties agree that, prior to the instant litigation, AEIC paid all amounts due to the Fachners under the contract. The Fachners have cited no cases to support the proposition that the insurance exception can account for fees incurred after the payment in full of the benefits of an insurance contract. Nor have the Fachners cited caselaw to support the conclusion that a letter that threatens legal action creates enough burden to support application of the exception. Accordingly, the Court finds that the insurance exception does not provide a basis for recovery of attorney fees in this case.

AEIC also argues that the Fachners "attempt to shoehorn Montana's UTPA language into an additional basis for an award of attorney fees." (Doc. 30 at 24). The Fachners make no response to AEIC's argument that there is no statutory basis for their claim to attorney fees. Instead, the Fachners merely address the viability of their claim under § 33-18-201(7). As above, there is no cause of action available to the Fachners under this section, and as such it cannot form the basis of a claim for attorney fees. Lacking a statutory or equitable exception to the American Rule, the Fachners' claim for attorney fees cannot withstand AEIC's motion for summary judgment.

### d. Breach of Implied Covenant of Good Faith and Fair Dealing

Count II of the Fachners' complaint asserts a claim for breach of the covenant of good faith and fair dealing. The Fachners allege AEIC's "conduct has been arbitrary, capricious, and unreasonable, thus utterly failing to meet Plaintiffs' justifiable expectations." (Doc. 5 at 7 ¶ 41). AEIC's sole challenge to Count II is that the Fachners are statutorily prohibited from bringing their Count II claim.

The Montana Supreme Court has explained that the UTPA "preserves an insured's common-law right to bring a breach of contract claim. Every insurance contract includes a covenant of good faith and fair dealing . . . . An insured may recover compensatory and consequential damages for breach of this duty in a breach of contract action." *Draggin' Y Cattle Co., Inc. v. Junkermier, Clark, Campanella, Stevens, P.C.*, 439 P.3d 935, 943 (Mont. 2019) (citations omitted). *See also Oltz v. Safeco Ins. Co. of Am.*, 306 F. Supp. 3d 1243, 1258 (D. Mont 2018) ("Montana law provides for breach of the implied covenant [of good faith and fair dealing] as a contract action . . . .").

AEIC contends that the language of Mont. Code Ann. § 33-18-242(3) precludes the Fachners from bringing their claim for breach of the covenant of good faith and fair dealing. In support, AEIC cites to a recent decision from this District, *King v. Health Care Services Corporation.,* No. CV-24-32-GF-BMM, 2024 WL 3430602 (D. Mont. July 15, 2024), in which the court found that the

14

plaintiffs' claim for breach of the covenant was actually an "insurance bad faith claim in disguise" and was therefore barred by § 33-18-242(3). *King,* 2024 WL 3430602 at *3 (quoting *DuBray v. Farmers Ins. Exch.,* 36 P.3d 897, 899 (Mont. 2001)).

A review of the Fachners' claim for breach of the covenant of good faith and fair dealing makes clear that their claim is not a contract claim, but is instead, as in *King*, an insurance bad faith claim. The amended complaint states that the Fachners have a "special relationship" allowing them to seek tort damages for a breach of the covenant, and asks for punitive damages for the breach. (Doc. 5 at 6-7 ¶¶ 39-41). While it is theoretically possibly to maintain a contract claim for breach of the covenant of good faith and fair dealing, this is not what the Fachners have plead, and their claim is barred by § 33-18-242(3). Accordingly, AEIC is entitled to summary judgment on Count II of the First Amended Complaint.

e. **Punitive Damages**

Montana law allows a party to recover punitive damages when a defendant has committed actual fraud or actual malice. Mont. Code Ann. § 27-1-221. Pursuant to Mont. Code Ann. § 27-1-221,

> A defendant is guilty of actual malice if the defendant has knowledge of facts or intentionally disregards facts that create a high probability of injury to the plaintiff and:
>
> > (a) deliberately proceeds to act in conscious or intentional disregard of the high probability of injury to the plaintiff; or

15

>>(b) deliberately proceeds to act with indifference to the high probability of injury to the plaintiff.

Mont. Code Ann. § 27-1-221(2).[1] The Montana Supreme Court has explained that "[t]he defendant's state of mind represents a key element in determining whether a defendant acted with actual fraud or actual malice." *Malcolm v. Evenflo Co., Inc.*, 217 P.3d 514, 530 (Mont. 2009); *see also Lorang v. Fortis Ins. Co.*, 192 P.3d 186, 206 (Mont. 2008) ("as with proof of the alleged UTPA violation itself, proof of actual malice depends on what the insurer knew or disregarded when it considered the subject claim."). Because of the subjectivity and fact intensive issues involved in proving punitive damages, the determination of whether punitive damages are warranted is typically left to the jury. Courts should therefore deny summary judgment if a reasonable juror could determine clear and convincing evidence exists in the record to support a finding of actual fraud or actual malice. *Dunn v. Ancra Intern, LLC*, No. CV 10-58-M-DWM, 2011 WL 4478478, at *6 (D. Mont. Sept. 26, 2011); Mont. Code Ann. § 27-1-221(6) ("All elements of the claim for punitive damages must be proved by clear and convincing evidence.").

AEIC argues the Fachners have "no factual basis for their claim" to punitive damages. (Doc. 30 at 27). The Court need not find that the Fachners established

---

[1] Although punitive damages are also available with a showing of actual fraud, the Fachners do not appear to be proceeding under the fraud theory.

these statutory elements by clear and convincing evidence, however; that is the duty of the trier of fact. *Wolfe v. BNSF Railway Company,* No. CV 09-166-BLG-SPW, 2017 WL 710405, at *3 (D. Mont. Feb. 22, 2017). The Court instead must determine if the Fachners have presented evidence of actual malice which a reasonable jury could find sufficiently clear and convincing to establish liability.

The Fachners argue that they need only meet a standard of "presumed malice." (Doc. 33 at 26). The Fachners' support their conclusion by reference to a pair of Montana Supreme Court decisions; *Owens v. Parker Drilling Company* and *Hart-Anderson v. Hauck*. 676 P.2d 162 (Mont. 1984); 748 P.2d 937. However, both these cases rely on statutory language from § 27-1-211 that has since changed. In its current form, § 27-1-211 requires actual malice, not presumed. "In 1987, the Legislature amended [§ 27-1-211] to allow punitives upon proof, by clear and convincing evidence, of *actual* malice or oppression." *Lane v. Dunkle*, 753 P.2d 321, 324 (Mont. 1988) (emphasis in original).

Nevertheless, the Court finds the Fachners have presented evidence of actual malice which a reasonable jury could find sufficiently clear and convincing to establish liability. The Fachners argue AEIC "intentionally, or at least recklessly, disregarded the evidence that the damages to the Fachners' home objectively exceeded the Dwelling Coverage limits . . . ." (Doc. 33 at 11). The Fachners allege they told AEIC of extensive floor and foundation damage, and that they were

unable to get a contractor without help from AEIC. (Doc. 33 at 7). They further allege that they finally retained their own contractor, who provided a bid and engineering report reflecting the foundation damage, but AEIC rejected the updated bid. (Doc. 33 at 7). Ultimately AEIC's own engineer agreed the foundation damage was caused by the fire, but still AEIC did not declare the home a total loss. (Doc. 33 at 8-9). The Fachners allege AEIC ignored the true nature of the damage to their home and refused to conduct a reasonable investigation of their claim, which ultimately resulted in a delay of payment. (Doc. 33 at 27). Although the Court has determined the delay in payment does not give rise to a breach of contract claim, it arguably contributed to damages the Fachners are able to seek under their surviving UTPA claims. The facts are as alleged are sufficient to support the Fachners' claim for punitive damages at this stage. Accordingly, AEIC is not entitled to summary judgment on this issue.

## IV.    Conclusion

Accordingly,

IT IS ORDERED that AEIC's motion for partial summary judgment (Doc. 28) is GRANTED IN PART and DENIED IN PART as follows:

The motion is GRANTED as to Count I, Count II, and subpart iii of paragraph 44 of Count III of the Fachners' amended complaint, as well as the Fachners' claim for attorney fees.

The motion is DENIED as to the Fachners' claim for punitive damages.

DATED this 21st day of July 2025.

_____
Kathleen L. DeSoto
United States Magistrate Judge